UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ALBERT GUILLEN, JR., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. C-11-223 |
| § | |
| ARANSAS COUNTY SHERIFF'S § | |
| OFFICE; dba ARANSAS COUNTY, § | |
| § | |
| Defendant. § | |

## ORDER GRANTING SUMMARY JUDGMENT

Before the Court is Defendant Aransas County's Motion for Summary Judgment (D.E. 20). Defendant Aransas County seeks summary judgment on all of the Plaintiff's claims for discrimination on the basis of age and disability. For the reasons set out below, the motion is GRANTED.

## JURISDICTION

Plaintiff states claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* and Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*[1] Such claims present federal questions within the meaning of 28 U.S.C. § 1331 and confer jurisdiction on this Court. Venue is appropriate under 28 U.S.C. § 1391(b) as the parties and the events made the basis of this lawsuit are situated within the geographic jurisdiction of this Court.

---

[1] While Guillen's Complaint contains a reference to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Complaint does not make any factual allegations related to race, color, religion, sex, or national origin.

## OVERVIEW

Plaintiff Albert Guillen, Jr. (Guillen) worked as a Deputy for the Aransas County Sheriff's Department (Sheriff) for over six (6) years. The Sheriff terminated Guillen on November 17, 2009. Guillen filed his Complaint (D.E. 1) against the Sheriff alleging that his discharge was discriminatory, based on his age (54 years) and disability (high blood pressure and/or "heart condition"). The Sheriff states that Guillen is not disabled within the meaning of the law because Guillen's doctor provided documentation that Guillen was released to work without restrictions. The Sheriff further defends, stating that Guillen was discharged for unacceptable job performance, complaints from other deputies, and insubordination, with neither age nor disability playing a part in the decision.

## THE AGE DISCRIMINATION CLAIM

There are four elements that must be proven to establish an age discrimination claim under the ADEA. Guillen must demonstrate that: (1) Guillen is within the protected class; (2) Guillen is qualified for the position; (3) Guillen suffered an adverse employment decision; and (4) Guillen was replaced by a younger worker or was treated less favorably than similarly situated younger employees. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003). Defendant seeks summary judgment on the fourth element: that Plaintiff has no evidence that he was replaced by a younger worker or treated less favorably than younger employees.

In his deposition, Guillen was asked "Who—what was the age of the person that replaced you?" His response was, "I have no—I don't know who replaced me." D.E. 20-

2 / 13

2, p. 8. This same ignorance was displayed later in the deposition, where he admitted that he did not know the identity or the age of anyone who replaced him. D.E. 20-2, p. 10. In his "affidavit" in response to the motion for summary judgment, Guillen effectively sheds no further light on this issue. He states, "I was replaced by officer personnel under the age of 40 and without known disabilities." D.E. 21-1, p. 3. This is insufficient to prevent summary judgment for two reasons.

First, the "affidavit" is not verified or dated. Consequently, it does not qualify as summary judgment proof as an affidavit, acknowledged as required by Fed. R. Civ. P. 56(c)(4) and Fed. R. Evid. 902(8), or as an unsworn declaration, dated as required under 28 U.S.C. § 1746. Second, it states a vague conclusion rather than verifiable facts and is belied by Guillen's deposition testimony. It thus has no probative value. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996); *Callahan v. Gulf Logistics, L.L.C.*, 456 Fed. Appx. 385, 395, 2011 WL 6846269, 8 (5th Cir. 2011) (vague references to "personnel" contradicted by other testimony is insufficient summary judgment evidence); *White v. Government Employees Ins. Co.*, 2012 WL 13783, *5 (5th Cir. Jan. 4, 2012) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Guillen also makes an effort to show pervasive discrimination or preferential treatment for younger employees. He claims that other officers performing at the same level as he was, but who were under the age of forty (40), did not suffer the same disciplinary sanctions or termination as did he. D.E. 21-1, p. 2, 6. These statements do not include sufficient details regarding the conduct that should have been disciplined or

the specific dates and supervisory reactions. They amount to no more than bare allegations or surmise.

Guillen also names five (5) other employees who were terminated and were over the age of forty (40). D.E. 21-1, pp. 2, 5-6. However, he does not include any explanation to prove that they were discharged for no other reason than their age. Guillen's statements regarding the terminations at Defendant Sheriff's Department, including his own, do not rise above general allegation or speculation. *E.g., Lujan, supra*; *Douglass, supra*.

For the same reasons cited above, Guillen's "affidavit" does not constitute summary judgment evidence sufficient to establish disputed issues of material fact because of defects in form and substance. Guillen has failed to provide this Court summary judgment evidence to demonstrate that the Sheriff had an age discrimination animus based on the comparative youth of Guillen's replacement or some other substantial indicia of discrimination or preferential treatment of others.

Guillen asks the Court to overlook the weakness of his proof by inviting the Court to consider the Sheriff's alleged "mixed motives," suggesting that some age discrimination combined with some disability discrimination was the reason for the adverse employment action. D.E. 21, p. 6. He goes so far as to refer to this as a "double whammy" in his "affidavit."[2] D.E. 21-1, p. 2. *See also* D.E. 21-1, pp. 3 ("I cite the reason for my termination as Age *and* Disability Discrimination"), 4 (referring to other

---

[2] While the "affidavit" is insufficient as summary judgment evidence, it may be used to supplement Guillen's allegations.

officers who were under the age of 40 *and* not disabled), 6 ("It is clear to me that I was fired because I am over 40 *and* because of my heart condition").

Rather than bolstering his age discrimination claim, this argument defeats it. According to *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010), age must be the "but for" cause of the employer's action for liability to attach under the ADEA. The Supreme Court has held that mixed-motive cases, while permitted in Title VII cases, are not permitted under the ADEA. *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350 (2009).

A plaintiff cannot prevail in a mixed-motive age discrimination case because the burden never shifts to the defendant to disprove the discriminatory motive. The reason for this is that the ADEA does not permit an action when the alleged discrimination is "*a* motivating factor." Instead, age discrimination must be *the determining factor* for the adverse employment action. *Id.*[3] Guillen's age discrimination complaint fails as a matter of law because he does not satisfy the fourth element of the cause of action and because he has alleged a mixed-motive scenario. Defendant's motion for summary judgment on the age discrimination claim is GRANTED.

## THE DISABILITY DISCRIMINATION CLAIM

To assert a claim for discrimination based on a disability under the ADA, Guillen must show: (1) that he is disabled; (2) that he is qualified and able to perform the essential functions of his job; and (3) that his employer discriminated against him

---

[3] The same is not true for mixed-motive claims under the ADA. *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008).

because of his disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). The Sheriff seeks summary judgment that Guillen cannot satisfy the first and third elements.

Under the ADA, "disability" is broadly defined as follows:

> (1) Disability
>
> The term "disability" means, with respect to an individual--
>
>> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>>
>> (B) a record of such an impairment; or
>>
>> (C) being regarded as having such an impairment (as described in paragraph (3)).
>
> (2) Major life activities
>
>> (A) In general
>>
>>> For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
>>
>> (B) Major bodily functions
>>
>>> For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.
>
> (3) Regarded as having such an impairment
>
>> For purposes of paragraph (1)(C):
>>
>>> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this

> chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> (B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.
>
> (4) Rules of construction regarding the definition of disability
>
> The definition of "disability" in paragraph (1) shall be construed in accordance with the following:
>
> (A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.
>
> (B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.
>
> (C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.
>
> (D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.
>
> (E)(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as--
>
> (I) medication, . . . .

42 U.S.C. § 12102.

Guillen does not allege a particular disability in his Complaint (D.E. 1). Instead, he claims that the Sheriff discriminated against him because a supervisory employee of

the Sheriff's Department believed that Guillen was taking medical leave when there was nothing really wrong with him. D.E. 1, p. 3. In his motion, the Sheriff suggests that the alleged disability is high blood pressure and that is the condition most discussed in Guillen's deposition excerpts provided to the Court. D.E. 20-2, p. 11.

The Fifth Circuit has written:

> In this case, [plaintiff] has provided no evidence to show that either the high blood pressure or the alleged side effects from the medication substantially limited his job. We agree with the district court that "[h]igh blood pressure alone, without any evidence that it substantially affects one or more major life activities, is insufficient to bring an employee within the protection of the ADA." *Oswalt*, 889 F.Supp. at 258. We do not imply that high blood pressure in general can never be a "disability," as defined by the statute. We hold only that [plaintiff] failed to provide any evidence that his high blood pressure substantially limited a major life activity.

*Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996).

Guillen also testified that he has a "heart condition." D.E. 20-2, p. 11.[4] His cardiologist signed off on a note stating that Plaintiff could "resume full work responsibilities with no restrictions" as of September 4, 2009, about a week after Guillen had asked to be excused from the physical agility test so that he could have his condition tested by a doctor. D.E. 20-1, p. 12; 20-2, pp. 6-7. Guillen testified that he had no reason to disagree with his cardiologist. D.E. 20-2, pp. 12-13. At his deposition, when asked

---

[4] Guillen's "affidavit" states:
> I suffered from a medical condition of an irregular and malfunctioning heart. The effect of this ailment was increased blood pressure, heart fluttering, anxiety and medical distress on my heart and circulation. I found that I had difficulty breathing, fear I was going to die because my heart would stop, and fatigue, tiredness, sleeplessness, and a deteriorated physical functioning due to this condition. The effect was pervasive on my day-to-day living. I began suffering from heart palpitations, irregular heartbeat and cardiological distress during my employment with ACSD. I received medical treatment for my condition.

D.E. 21-1, p. 1. However, because of its formal defects, this "affidavit" does not constitute summary judgment evidence.

"what sort of activities does this high blood pressure cause you to not be able to do?" He responded "Nothing. I can still patrol." Again, "So there's no, like, life activities that this high blood pressure causes you to not be able to do?" Answer: "No." D.E. 20-2, p. 11.

Guillen took the physical agility test that the Sheriff required of all patrol officers, involving a mile run and 15-25 push-ups. D.E. 20-2, pp. 4-5, 7. Guillen completed the test but did not pass it because he did not run the mile distance within the time alotted. D.E. 20-2, p. 11. He then testified that high blood pressure "could have been part of" the reason he failed to run the mile within the alotted time. So just as the evidence is not entirely clear on the existence of a disability as defined by the statute, it begins to cut into the second element of Guillen's claim: whether he is qualified and able to perform the essential functions of his job.

The Court declines to render summary judgment on either of the first two elements of Guillen's ADA claim. Instead, Guillen's disability discrimination claim fails on the third element: whether the Sheriff actually discriminated on the basis of the alleged or perceived disability.

### THE DEFENDANT'S NON-DISCRIMINATORY MOTIVE

At issue is the termination decision made by the Sheriff because an "adverse employment action" consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). It is clear that the Sheriff, himself, made the decision to terminate Guillen. D.E. 20-1. Chief Deputy, John Gutierrez, who appears to be the

center of Guillen's complaints, did not have the power to take adverse employment action against Guillen.  Guillen's Depo., D.E. 20-2, p. 9.

First, there is substantial evidence that the Sheriff and his employees did not even believe that Guillen was, in fact, disabled.  D.E. 20-1.  The Complaint states that Chief Deputy John Gutierrez referred to Guillen's problem as an "alleged condition."  D.E. 1, p. 3.  Furthermore, Guillen had provided his cardiologist's note releasing him to work without restrictions.  D.E. 20-1, p. 12.  Defendant Sheriff testified in his affidavit that he had received the doctor's note, accepted it at face value, and thus did not consider Guillen to be disabled.  D.E. 20-1, pp. 5-6.

Thus there is some summary judgment evidence that the Sheriff did not act with an anti-disability animus because he did not believe that a disability was in issue.  Guillen has failed to provide the Court with competent summary judgment evidence to show that the Sheriff did, in fact, believe or perceive Guillen to be disabled from any major life activity.

Second, the Sheriff provided copies of documents prepared by his Chief Deputy and two other deputies that complained of Guillen's work performance, citing specific instances of what they considered sub-standard conduct, failure to abide by department policies and procedures, and potentially placing life and limb in danger.  D.E. 20-1, pp. 1-11.  The Sheriff contends that his decision to terminate Guillen was based on these documents and his own understanding of Guillen's work performance—unrelated to any disability.  D.E. 20-1.

Guillen's "affidavit" states that the descriptions of the incidents set out in those letters were simply false.[5] D.E. 21-1, pp. 2-6. Setting aside the formal defects of the "affidavit" and assuming, *arguendo*, that Plaintiff's contrary version of the events in those letters is true, Plaintiff still has not raised a disputed issue of material fact for trial. That is because the question is not whether complaints about Plaintiff's work performance were accurate but whether the Sheriff acted on their content rather than acting in a discriminatory manner. It is not actionable that an employer's decision is based on information that a jury could find to be false. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002); *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)).

There is, however, one way to find employer liability based on such things as false personnel reports. That is when a person in a position of influence, motivated by discriminatory animus, engages in a campaign to generate false evidence designed to influence the person in charge of the employment decision to initiate an adverse employment action. This is referred to as a "cat's paw" case—where one party manages to control the exercise of another's power, using false information or other influences. *See Staub v. Proctor Hospital*, ___ U.S. ___, 131 S.Ct. 1186, 1190 (2011).

While Guillen complains that Chief Deputy Gutierrez had discriminatory animus, he does not explain, even in his inadmissible "affidavit" that other officers were equally discriminatory when they reported on Guillen's job performance. In particular, Sheriff

---

[5] Guillen claims that Dispatcher, Jody Duncan, would back him up. D.E. 21-1, p. 3. Of course, anything that Guillen represents to be Jody Duncan's proposed testimony is classic hearsay and is not admissible. Fed. R. Evid. 801(c), 802.

Mills testified to the following influences:

- Patrol Supervisor, Sargeant Harrison, who had provided Guillen with a written record of counseling explaining that Guillen had not been patrolling the neighborhoods that they wanted him to patrol. D.E. 20-1, p. 7.

- Deputy Huffman, who had requested a new partner because of his complaints of Guillen's failure to provide back-up and other failures to respond to calls. D.E. 20-1, pp. 8-9.

- Investigator, Rodney Cox, who reported that Guillen did not timely respond to calls or provide back-up. D.E. 20-1, pp. 10-11.

- A records audit showing Guillen's failure to follow directives. D.E. 20-1, p. 3.

A "cat's paw" case does not apply where such information supporting an adverse employment decision is not shown to be the product of discriminatory animus. Without evidence that these reports were based upon a discriminatory animus and without evidence that Sheriff Mills had his own discriminatory animus, Guillen has not provided this Court with evidence to raise a disputed issue of material fact sufficient to avoid summary judgment.

For the reasons stated above, the Defendant's motion for summary judgment (D.E. 20) is GRANTED. This action is DISMISSED WITH PREJUDICE.

ORDERED this 1st day of May, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE